UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

UNITED STATES OF AMERICA

       -vs-                                        08 Cr 535 (VM)

COREY JONES,
JASON JONES

                        Defendants.

------------------------------------------------------X

MEMORANDUM OF JASON JONES
IN SUPPORT OF THE MOTION FOR MITIGATION DISCOVERY

Statement of the case

The defendant Jason Jones is detained on the charge of murder of a government witness. His brother Corey is also charged. Both defendants are death eligible which requires that the defense makes a presentation to the government, first to the United States Attorney and then, if requested, to the Capital Case Committee of the Attorney General. The Attorney General will then make the decision whether to seek the death penalty. His decision is binding on the United States Attorney. This memorandum of law and the motion for discovery by Jason is addressed solely to mitigation discovery as it is our understanding that it is this issue on which the motion was invited by the court.

Facts

As early as June 26, 2008 Jason Jones sought mitigation discovery. (Letter of June 26, 2008 attached as addendum) Of the mitigation discovery sought the Government has supplied

1

items 1 (criminal history), 2 (probation reports), 5. (VOPs) and has declined to provide any detailed information as to Frank Jones, the victim. (Items 6,7,8) In addition, during the process of the bail hearing Don Buchwald, on behalf of Corey, discovered that Frank Jones was not¶ involved in any investigation of Jason or Corey Jones (declaration of Don Buchwald ¶8). The Government has declined to identify on which investigations or prosecutions Frank Jones was cooperating.

Mr. Buchwald also discovered that a relative of the deceased, Shakienne Jones, presented a letter to the 44th Precinct on the eve of May 24, 2008 (Buchwald declaration ¶ 11). And that there are reports of Jones' statements to the police (*ibid* ¶12) and the government has once again declined to supply them.

### ARGUMENT

The Governments restricted view of its discovery obligations assumes that what is written in Rule 16 of the Federal Rules of Criminal Procedure settles the matter as graven in stone. That is untrue.

"[a] federal court, guided by considerations of justice, may exercise its supervisory powers to formulate procedural rules not mandated by the constitution [or statute]" ***United States v. Ming He***, 94 F.3d 782,792 (2d Cir. 1966). We respectfully suggest that broader discovery than usual is mandated by the Department of Justice Manual (DOJ Manual) in all cases that carry a potential death sentence. See DOJ Manual §9-10.000 et sec.

As the manual requires that "counsel for the defendant shall be provided an opportunity to present to the [Capital Case] Committee, orally in writing, the reasons that the death penalty should not be sought."Id. § 9-10.0000B, the issue then becomes what represents effective

representation before the committee or, more accurately put, what level of presentation to and consideration by the Committee comports with due process in this life or death decision making process?

While the Government has taken the position here that the issue is confined to the statutory aggravators and mitigators contain in 18 U.S.C. 3592, in fact that is not all the United States Attorney and the government must consider. The DOJ Manual says in pertinent part:

> 9-10.130 Standards for Determination
>
> The standards governing the determination to be reached in cases under this Chapter include fairness, national consistency, adherence to statutory requirements, and law- enforcement objectives.
>
> 1. Fairness requires all reviewers to evaluate each case on its own merits and on its own terms. As with all other actions taken in the course of Federal prosecutions, bias for or against an individual based upon characteristics such as race or ethnic origin play no role in any recommendation or decision as to whether to seek the death penalty.
>
> 2. National consistency requires treating similar cases similarly, when the only material difference is the location of the crime. Reviewers in each district are understandably most familiar with local norms or practice in their district and State, but reviewers must also take care to contextualize a given case within national norms or practice. For this reason, the multi-tier process used to make determinations in this Chapter is carefully designed to provide reviewers with access to the national decision- making context, and thereby, to reduce disparities across districts.
>
> 3. In determining whether it is appropriate to seek the death penalty, the United States Attorney, the Capital Review Committee, and the Attorney General will determine whether the applicable statutory aggravating factors and any non-statutory aggravating factors sufficiently outweigh the applicable mitigating factors to justify a sentence of death or, in the absence of any mitigating factors, whether the aggravating factors themselves are sufficient to justify a sentence of

death. Reviewers are to resolve ambiguity as to the presence or strength of aggravating or mitigating factors in favor of the defendant. The analysis employed in weighing the aggravating and mitigating factors should be qualitative, not quantitative: a sufficiently strong aggravating factor may outweigh several mitigating factors, and a sufficiently strong mitigating factor may outweigh several aggravating factors. Reviewers may accord weak aggravating or mitigating factors little or no weight. Finally, there must be substantial, admissible, and reliable evidence of the aggravating factors.

    4. In deciding whether it is appropriate to seek the death penalty, the United States Attorney, the Capital Review Committee, the Deputy Attorney General, and the Attorney General may consider any legitimate law-enforcement or prosecutorial reason that weighs for or against seeking the death penalty

The Attorney General must consider, among other things, the strength of the case and the flip side of that element, whether there is sufficient reason to believe that others, particularly those against whom Frank Jones had cooperated, might well have been the perpetrators. If the Attorney General does not take such an analysis into account in making his decision, he should.

A sentencer, and in this circumstance the attorney General is functioning in that capacity, contemplating the death penalty has a constitutional obligation to consider, "as a mitigating factor, any aspect of a defendant's character or record and <u>any of the circumstances of the offense that the defendant proffers</u> as a basis for a sentence less than death." *Eddings v. Oklahoma*, 455 U.S. 104, 110, 102 S.Ct 859 (1982) (quoting Lockett v. Ohio, 438 U.S. 586, 604, 98 S. Ct. 2954, 57 L. Ed. 2d 973 (1978)). (underlining supplied) Applying Eddings to this case, both the sentencing judge and the Arizona Supreme Court had a constitutional duty, before choosing or [*1046] affirming a death sentence, to consider all mitigating factors that Lopez's trial counsel proffered. The analogy between the sentencing authority and the Attorney General is a strong one although clearly here there is no proof beyond a reasonable doubt.

More importantly, if advocacy on behalf of a client means anything, the attorney for

4

potential death penalty defendants must have the facts at his/her command in order to effectively make a case rather than rely on some internal knowledge which may or may not be complete and is certainly without an application of pro defense argument that might convince the Attorney General of its effectiveness should the case go to trial as a death penalty case.

The fact is that the information sought by both defendants here is Brady information. **Brady v. Maryland**, 373 U.S.83, 87, 83 S.Ct. 1194(1963) held that "the suppression of evidence favorable to the accused upon request violates due process where the evidence is material to either guilt or **punishment**, irrespective of the good faith or bad faith of the prosecution" **Banks v Dretke**, 540 U.S. fn.5,  668. 682, 124 S.Ct. 1256, 1267 (2004) (emphasis supplied) The fact that the information sought may be used to develop a defense on the merits is a distinction without a difference in this case since the lacunae in the Government's case are exactly what make the case inappropriate to be tried as a death penalty case.

This Court has the authority to go beyond statutory mitigators as discoverable material. The Government should be ordered to turn over the material demanded.

Respectfully submitted,

*[signature]*

Frederick H. Cohn
George R. Goltzer
Attorneys for Defendant Jason Jones
61 Broadway
Suite 1601
New York, NY 10006
212-768-1110

## FREDERICK H. COHN
ATTORNEY AT LAW
61 BROADWAY
SUITE 1601
NEW YORK, NY 10006
212-768-1110
FAX 212-267-3024
fcohn@frederickhcohn.com

June 26, 2008

Steve C. Lee
United States Attorney's Office
1 St. Andrews Plaza
New York, NY 10007

        Re: United States v. Corey Jones &
        Jason Jones   08 Cr. 535

Dear Mr. Lee:

  In anticipation of tomorrow's meeting in regard to discovery please be advised that the areas I wish to discuss are listed below.

### Fact discovery

1. I assume that we will be provided with, ballistics, medical examiner reports, hospital reports, transcripts of any 911 calls, video footage recovered from local surveillance cameras, crime scene photographs and reports, and any statements allegedly made by the defendants. Any material that has been produced to you in electronic form, such as police DD5s and 61s or Federal agency reports should be reproduced to me in the form in which you received it. If it requires proprietary software to read it, (as opposed to Word, Word Perfect or PDF) please advise prior to production so that we may elect to have it produced in paper form if necessary. I do not know about Mr. Buchwald but I assume he, like me, has all the standard programs available to him.

2. It is my view that we are entitled to production of the reports that itemize Frank Jone's cooperation. This is particularly true if he had cooperated against persons other than the defendants in this case. Where there are indictments for the cases on which he cooperated, the indictment number and the name of the defendant against whom he gave information (in case it is a multiple defendant case) will suffice. If the person he has given information against has not been arrested, then the name of that person is discoverable and should be turned over now. We will accept a reasonable protective order which does not limit our right to investigate.

LAW OFFICES
FREDERICK H. COHN

Jones Discovery
June 26, 2008
Page-2-

Mitigation discovery

Given the time involved and that neither of the defendants is willing to wait interminably to submit his mitigation to your committee and ultimately to the Attorney General, certain discovery becomes necessary at an early moment. Below a list which will certainly be expanded in the future:

1. Jason Jones' criminal history.
2. Any probation report as to Jason Jones in this district.
3. Prison records now in possession of the Government. Said records to include any reports on special programs, disciplinary records including any hearings.
4. Medical records kept by BOP.
5. Any application by the Government to violate the defendant's supervised release.
6. The criminal history of Frank Jones.
7. Cooperation agreement entered into by Frank Jones.
8. Any probation report prepared on Frank Jones.

It is my view that any information in the possession of the Government which might tend to convince the Attorney General that the death penalty was inappropriate in this case constitutes information analogous to Brady material. We expect you to search your records for such material.

Very truly yours,

Frederick H. Cohn

cc: Don Buchwald, Esq.
    George Goltzer, Esq.